UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                             Case No. 3:12-cr-105-J-34MCR

JOHN DENTON ROUSE, JR.

_____

**O R D E R**

**THIS CAUSE** is before the Court on Defendant Rouse's Motion for New Trial and Request for Permission to File Supplemental Motion Upon Receipt of Internal Affairs File on Detective Cook (Doc. 108; Motion), filed on March 27, 2015. On February 27, 2015, the second day of a two-day bench trial, the Court made specific findings of fact and found Defendant John Denton Rouse, Jr. guilty as to Counts One and Three of the Indictment (Doc. 1). See Minute Entry (Doc. 104). Specifically, the Court found Defendant Rouse guilty of knowingly and intentionally possessing with the intent to distribute cocaine in an amount of 500 grams or more in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count One), and knowingly possessing, in and affecting commerce, firearms after having been previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) (Count Three). See Minute Entry (Doc. 104); Indictment (Doc. 1). In the Motion, Defendant Rouse requests that the Court grant him a new trial "with respect to the Court's determination of proof of the drug quantity element of this offense." See Motion at 1.[1] Defendant also requests leave to file a supplement to his Motion in order to submit matters

---

[1] The Court notes that Defendant stipulated to the facts supporting a finding of guilt with respect to all elements of Counts One and Three except the drug quantity. See Stipulation of the Parties (Doc. 100), filed February 23, 2015.

obtained from the Jacksonville Sheriff's Office Department of Internal Affairs file concerning the credibility of Detective Cook, a witness in this case. Id. at 1, 13-14. The government filed a response in opposition to the Motion on April 22, 2015. See United States' Response in Opposition to Defendant's Motion for New Trial (Doc. 112; Response). Pursuant to his request, the Court granted Defendant the opportunity to file a supplement to the instant Motion, if warranted. See Order (Doc. 119), entered November 4, 2015. On December 4, 2015, Defendant informed the Court that he "will not be filing a supplemental motion based on the internal affairs files relating to Detective Cook." See Rouse's Response to Court's Order [Doc. 119] (Doc. 120) at 1. Accordingly, this matter is ripe for review.

**I.      Summary of the Arguments**

Defendant's argument focuses solely on the Court's determination, as the fact-finder, of the "drug quantity element of this offense." See Motion at 1. Specifically, Defendant maintains that "[a]s a matter of law the evidence was legally insufficient to establish the drug quantity alleged in the indictment." Id. Acknowledging the authority in United States v. Baggett, 954 F.2d 674 (11th Cir. 1992), Defendant concedes that circumstantial evidence can be sufficient to prove that an individual was dealing in a controlled substance. See Motion at 4. However, Defendant maintains that such evidence is insufficient to establish that individual packages of white powder each contain cocaine for purposes of determining, beyond a reasonable doubt, the drug quantity. Id. at 4-5. Defendant contends that because the separately packaged bags of white powder at issue in this case were commingled before the Drug Enforcement Administration (DEA) performed the chemical analysis, the government has not established beyond a

2

reasonable doubt that each of the bags of white powder, "some of which were clearly commercially packaged products identified on their retail labels as 'incense,'" contained cocaine in order to calculate the total weight of the controlled substance in Defendant's possession. Id.[2]

According to Defendant, "[i]t simply is not possible to identify powder cocaine by sight and to hold otherwise is to defy the laws of science." Id. at 5. As such, Defendant argues that Detective Cook's testimony in which he identified the white powder contained in the packages as powder cocaine "violates Rouse's right to Due Process of law." Id. Defendant contends that the reliability of Detective Cook's testimony in identifying the substance in the bags as cocaine is undermined because his belief that some of the bags contained crack cocaine was proven incorrect when chemical testing identified the substance as powder cocaine. Id. at 5-6. Therefore, Defendant contends that the Court should have excluded Detective Cook's testimony as unreliable expert testimony pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See id. at 6-9.

In support of his argument, Defendant relies on the Florida Supreme Court's decision in Greenwade v. Florida, 124 So. 3d 215 (Fla. 2013). In Greenwade, the Florida Supreme Court reasoned that:

> [T]he process of commingling creates an unjustifiably high risk that noncontrolled substances will be inappropriately mixed with controlled substances. Once multiple packets of individually wrapped powder are commingled before they are chemically tested, the simple process of

---

[2] Exhibit 12A is a combination of the white powdery substance found in several clear plastic bags that were seized in the search. According to the DEA chemist, the combined mixture weighs 859.5 grams and is 5.9% pure cocaine. Defendant argues that not all of the bags included in this combination contained cocaine, such that he should not be held responsible for the full weight. Exhibit 13A also contains a substance seized in the search, originally believed to be crack cocaine, but later chemically identified as powder cocaine weighing 195.8 grams with a 28.6% purity level. Defendant does not dispute the identity or weight of this evidence.

3

>>commingling irreversibly destroys both the independent chemical composition of each individually wrapped packet and the ability to discern whether the pre-commingled substance was controlled or counterfeit.

Greenwade, 124 So. 3d at 229. As such, the Greenwade court held that "the State must chemically test every individually wrapped packet of white powder seized in order to establish the statutory threshold weight for trafficking . . . ." Id. The court emphasized that "this rule only applies when the substance discovered is one that poses an identifiable danger of misidentification, such as the white powder discovered in this case." Id. Based on the reasoning in Greenwade, as well as the analysis set forth in Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Prosecution,[3] Defendant argues that the government failed to meet its burden of proof beyond a reasonable doubt as to the quantity of the controlled substance in his possession. See Motion at 13.

## II. Applicable Law

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[4] Although motions for new trial are disfavored, see United States v. Williams, 146 F. App'x 425, 434 (11th Cir. 2005), the "interest of justice" standard is broad, and the trial court is vested with substantial discretion in determining whether to grant the motion. See United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir.

---

[3] Michael D. Blanchard & Gabriel J. Chin, Identifying the Enemy in the War on Drugs: A Critique of the Developing Rule Permitting Visual Identification of Indescript White Powder in Narcotics Prosecution, 47 Am. U.L. Rev. 557 (1998)).

[4] As the Eleventh Circuit recognized, there are two grounds for granting a new trial under Rule 33: "interest of justice" and newly discovered evidence. See United States v. Hall, 854 F.2d 1269, 1270 (11th Cir. 1988). In this case, the only ground that could potentially be implicated in the Motion is the "interest of justice." See generally Motion.

4

1985). The court considers "whether the verdict must be set aside 'in the interest of justice.'" United States v. Green, 275 F. App'x 898, 899 (11th Cir. 2008) (internal quotations omitted); see also Vicaria, 12 F.3d at 198; Hall, 854 F.2d at 1271 (concluding that the trial "court has very broad discretion in deciding whether there has been a miscarriage of justice"); Martinez, 763 F.2d at 1312.

When a defendant challenges the weight of the evidence in a motion for a new trial, the court "need not view the evidence in the light most favorable to the verdict" and "[i]t may weigh the evidence and consider the credibility of witnesses." Martinez, 763 F.2d at 1312; see also Green, 275 Fed. App'x at 900; United States v. McMahon, No. 8:04-cr-348-T-24TGW, 2007 WL 57778, at *1 (M.D. Fla. Jan. 5, 2007). Yet, "'[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" Green, 275 F. App'x at 900 (quoting Martinez, 763 F.2d at 1312-13). Indeed, "[f]or a court to set aside the verdict, '[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" Id. (quoting Martinez, 763 F.2d at 1313). Motions for a new trial based on the weight of the evidence are to be granted "'sparingly and with caution,' only in 'exceptional cases.'" Id. (quoting Martinez, 763 F.2d at 1313).

### III.   Discussion

Upon careful review, the Court finds that Defendant's Motion presents three questions: (1) whether a law enforcement officer's opinion on the identity of an alleged narcotic substance constitutes expert testimony, (2) whether circumstantial evidence is sufficient to prove the identity of separate packages of white powder, and (3) whether the evidence presented in this case preponderates heavily against the finding as to the drug

quantity. Turning to the first question, to the extent Defendant argues that Detective Cook's testimony fails to satisfy the requirements of Rule 702, Federal Rules of Evidence (F.R.E.), this argument is without merit.[5]  Notably, during the bench trial, Defendant did not object to Detective Cook's testimony or argue that he must be qualified as an expert to testify about the identity of the white substance. For the first time, in the instant Motion, Defendant argues that the Court erred in admitting this testimony because Detective Cook does not qualify as an expert pursuant to F.R.E. 702 and Daubert. However, the Court need not determine whether Detective Cook satisfies the expert witness standards because Detective Cook did not offer any expert testimony. In the Eleventh Circuit, law enforcement officers may testify "as lay witnesses 'based upon their particularized knowledge garnered from years of experience within the field.'" See United States v. Jones, 218 F. App'x 916, 917 (11th Cir. 2007) (quoting Tampa Bay Shipbldg. & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003)). Here, Detective Cook testified that he has over twenty years of experience in law enforcement, with almost fourteen of those years as a narcotics detective. Detective Cook further testified that through his experience as a narcotics detective he has become familiar with the appearance of filler versus actual cocaine. According to Detective Cook, the white powder packaged in each of the clear plastic bags discovered during the search was cocaine. Because Detective Cook offered this opinion as a lay witness, based on his experience as a narcotics detective, Defendant's contention that Detective Cook does not

---

[5] In a motion for a new trial based on errors allegedly committed during the trial, the defendant has the burden to show that an error was committed and prejudice was suffered. See United States v. Lewis, No. 3:07-cr-112-J-33TEM, 2008 WL 2704414, at * 2 (M.D. Fla. July 8, 2008); United States v. Delaughter, No. 8:07-cr-201-T-27TBM, 2007 WL 3034645, at *1 (M.D. Fla. Oct. 16, 2007); see also Rule 52(a) (providing that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").

qualify as an expert under the requirements of F.R.E. 702 is unavailing. See United States v. Sanchez, 722 F.2d 1501, 1506 (11th Cir. 1984) (citing United States v. Ferguson, 555 F.2d 1372, 1373 (9th Cir. 1977) for the proposition that an "experienced officer may identify substance with which he is familiar").

As to the second issue raised in the Motion, Defendant relies on Greenwade to argue that having commingled the bags of white powder, the government cannot prove beyond a reasonable doubt that each bag contained cocaine, and therefore cannot prove the total amount of cocaine in Defendant's possession. However, the holding in Greenwade is premised on the proposition that a visual inspection of a packet containing white powder is insufficient to establish that the packet contains cocaine because a wide variety of substances also have a white powdery appearance. See Ross v. Florida, 528 So. 2d 1237, 1239-40 (Fla. 3d Dist. Ct. App. 1988) ("[A] visual examination of untested packets of this weight is insufficient to convict because the white powder contained therein may be milk sugar or any one of a vast variety of other white powdery chemical compounds not containing cocaine."); Greenwade, 124 So. 3d at 227 (adopting the "well reasoned" analysis in Ross). Accordingly, under Florida law, to prove that several packages of a white powdery substance all contain cocaine for purposes of calculating the total weight, the state must chemically test each package. See Greenwade, 124 So. 3d at 229. In contrast, the Eleventh Circuit Court of Appeals has instructed that "[a]lthough the identity of a narcotic must be established beyond a reasonable doubt, its nature may be established through circumstantial evidence." See Sanchez, 722 F.2d at 1506. In Baggett, the Eleventh Circuit explained that:

> [t]he law of this circuit takes the expansive view that the identification of a controlled substance can be established by such circumstantial evidence

> as "lay experience based on familiarity through prior use, trading, or law enforcement; a high sales price; on-the-scene remarks by a conspirator identifying the substance as a drug, and behavior characteristic of sales and use, such as testing, weighing, cutting and peculiar ingestion."

See Baggett, 954 F.2d at 677 (emphasis added) (quoting United States v. Harrell, 737 F.2d 971, 978 (11th Cir. 1984)). As such, the government need not offer a chemical analysis of the substance found in each of the plastic bags in order to establish that each of the bags contained cocaine. See United States v. Gonzales, 342 F. App'x 446, 448 (11th Cir. 2009) ("The introduction of a chemical analysis of a purported narcotic is not essential to conviction."). Indeed, even "'the uncorroborated testimony of a person who observed a defendant in possession of a controlled substance is sufficient if the person is familiar with the substance at issue.'" Baggett, 954 F.2d at 677 (quoting United States v. Zielie, 734 F.2d 1447, 1456 (11th Cir. 1984)).

Defendant attempts to distinguish this line of authority by arguing that the type of evidence discussed in Baggett is relevant only to determine whether Defendant was dealing in a controlled substance, which he admits, not as to the "exact identification of various bags of white powder" for purposes of calculating their weight. See Motion at 4. Given the undisputed fact that almost 200 grams of cocaine was present in the structure, the Court agrees that the presence of an advanced security system, scales, firearms, and large quantities of money does not necessarily prove that all of the other bags of white powder present in the structure also contain cocaine. See Transcript of Continuation of Stipulated Bench Trial (Doc. 109; Tr.) at 7-8. However, this is not the only evidence as to the identity of the substance in the plastic bags. As the Court explained in its findings, Detective Cook provided specific and persuasive testimony that, in his opinion, the chunky, rough substance in each of the bags was cocaine, not filler, see Tr. at 5-7, and

8

Baggett instructs that the identity of a controlled substance may be established through such evidence. See Baggett, 954 F.2d at 677-78. Thus, to the extent Defendant argues that the fact-finder could not properly rely on this evidence to determine the contents of each plastic bag found during the search, this argument is unavailing.

Finally, the Court considers whether the weight of the evidence preponderates heavily against the quantity finding such that it would be a "miscarriage of justice" to let the finding stand. See Green, 275 F. App'x at 900. For the reasons stated on the record at the conclusion of the bench trial, the Court does not find that the evidence adduced in this case preponderates heavily against the Court's determination as to the quantity of cocaine in Defendant's possession, or that this case is one of those "really exceptional cases" where a new trial should be granted based on the weight of the evidence. See Tr. at 4-9. Defendant argues that the evidence does not support the Court's finding because Detective Cook's identification of the narcotics is not reliable. See Motion at 5-6. Specifically, Defendant relies on the fact that Detective Cook identified some of the substance discovered during the search as crack cocaine, and a later chemical analysis revealed that the substance was powder cocaine. Id. However, Detective Cook testified that when he saw the substance in question he thought someone had attempted to cook it into crack cocaine and it failed during the cooking process. He explained that it looked like it was made with inferior cocaine so that it did not hold up the way he normally expected to see it. Indeed, the chemist also testified that, based on its appearance, she was not surprised that the seizing agents originally thought it was crack cocaine. As such, Detective Cook's mistaken identification of powder cocaine as poor quality or a failed attempt at cooking crack cocaine does not so undermine his testimony that a fact-finder

9

could not reasonably conclude that his testimony as to the other bags of white powder was credible.

Defendant also argues that Detective Cook failed to consider the possibility that some of the bags contained cut or filler and not cocaine. See Motion at 9. In support, Defendant points to the evidence that some of the plastic bags had "dried incense" labels on them, and the chemist's testimony that the cocaine mixture did contain the presence of other substances. See id. However, Detective Cook testified to his familiarity with the appearance of filler. Detective Cook explained that in his opinion, none of the white powder seized in the search was filler because filler is typically a fine white powder, whereas the substance seized was rougher, with a chunkier consistency, as if it had been compressed at some point.[6] This testimony is further supported by that of the chemist who explained that she did identify the presence of some adulterants in the mixture submitted for analysis, but that the adulterants she found were of a type which have the consistency of a loose, white powder. Moreover, the Court has examined the pictures showing the incense labels, and in light of the haphazard manner in which the labels are affixed to the plastic bags, a fact-finder could reasonably conclude, as the Court did, that, despite the labels, these bags are not "commercially-packaged" bags of incense. Accordingly, after careful consideration of Defendant's arguments, the Court is not convinced that the weight of the evidence in this case preponderates heavily against a finding that the amount of cocaine seized in the search exceeded 500 grams. In light of the foregoing, it is

---

[6] The Court also examined Exhibit 12A, which contained the substance in question, and agreed that the vast majority of the substance in this Exhibit "was still in a chunky, rough consistency, consistent with having been compressed previously." See Tr. at 6.

**ORDERED**:

Rouse's Motion for New Trial and Request for Permission to File Supplemental Motion Upon Receipt of Internal Affairs File on Detective Cook (Doc. 108) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida on December 30, 2015.

MARCIA MORALES HOWARD
United States District Judge

lc11
Copies to:

Counsel of Record